IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOUGLAS HORNING,

            Petitioner,           OPINION AND ORDER

v.

                                       23-cv-316-wmc

R.D. KEYES,

           Respondent.

Petitioner Douglas Horning, a federal prisoner currently is incarcerated at USP-Thomson in Illinois, seeks post-conviction relief under 28 U.S.C. § 2241, contending that he has earned sufficient Federal Time Credits ("FTCs") to entitled him to immediate placement in pre-release custody under the First Step Act of 2018 ("FSA"). Although venue in this court is improper because Horning is no longer incarcerated within this district, this defect is not jurisdictional, *Moore v. Olson*, 368 F.3d 757, 760 (7th Cir. 2004), and the court will take up and deny his petition because: (1) he failed to exhaust his administrative remedies; (2) he has not shown sufficient FTCs to entitle him to an earlier release; and (3) his petition now appears moot as his release should have occurred by now.

OPINION

The FSA permits inmates who complete recidivism reduction programs or activities to earn FTCs toward time in pre-release custody or supervised release. *See* 18 U.S.C. §§ 3632(d)(4)(A) and (C). However, not all prisoners are eligible to earn FTCs and apply them toward a release. To begin, prisoners serving a sentence for certain specified crimes are ineligible to receive FTCs under 18 U.S.C. § 3632(d)(4), under 18 U.S.C. § 3632(d)(4).

1

In addition, to determine whether an inmate may earn FTCs, the BOP conducts a risk and needs assessment called the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), which places each inmate in one of four recidivism risk categories -- high, medium, minimum or low.  After the PATTERN score is assessed, the inmate must successfully *complete* certain designated programs and activities to earn FTCs.  Finally, to actually apply earned FTCs towards pre-release custody or supervised release, sections 3624(g)(1)(A)-(C) require that the inmate:  (1) have earned FTCs in an amount equal to the remainder of the inmate's term of incarceration; (2) show through periodic risk assessments a demonstrated recidivism risk reduction or maintain a minimum or low risk while imprisoned; and (3) had the remainder of the imposed term of imprisonment be computed under applicable law.

To apply FTCs towards *pre*-release custody, as petitioner Horning seeks here, an inmate must also either:  maintain a minimum or low recidivism risk through the two prior assessments; or obtain approval from the warden for transfer to pre-release custody after determining that the inmate is not a danger to society, has made a good faith effort to lower his recidivism risk and is unlikely to recidivate.  § 3632(g)(1)(D)(i).  Respondent opposes the pending petition on multiple grounds, but the court need only address two and, ultimately, must dismiss his petition on mootness grounds.

*First*, respondent asks that the court deny the petition because Horning failed to exhaust his administrative remedies available to him before filing his petition.  Although there is no express exhaustion requirement to seek relief under § 2241, courts generally require that an inmate exhaust the bureau's administrative remedies.  *See Richmond v.*

2

*Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) (applying common-law exhaustion rule for § 2241 actions); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (court "review[s] a claim concerning the computation of a sentence only after administrative remedies have been exhausted").  Even so, a district court *may* excuse exhaustion where:  (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.  *Gonzalez v. Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).

Here, Horning submitted a BP-8 on March 10, 2023, requesting that the BOP confirm that his projected release date is August 2, 2023.  Then Horning submitted a BP-9 claiming that the BOP had to estimate a conditional projected release date by calculating the maximum number of potential FTCs that an inmate *could* earn during his sentence. However, respondent informed Horning that as of April 18, 2023, he only had 75 days of FTCs, which meant that his projected release date was October 31, 2023.  Respondent also informed Horning that:  his FTCs could not be applied to his sentence until they were earned; and as Horning earned FTCs, they would be applied towards his release date. Horning appealed these determinations on or about May 1, 2023, to the North Central Regional Office, which responded on May 31, 2023, that Horning's 90 FTCs had been applied to his sentence, which advanced his release date to October 16, and that his transfer to home confinement would be August 17.  On June 13, the Regional Director issued a

3

corrected response, noting that his FTCs had been recalculated, and his projected release date was actually October 1. Horning did not appeal that response to the BOP's Office of the General Counsel.

Horning has not shown that he cannot complete the exhaustion process before his October 1 release date. The only step left for Horning to take to complete the process is appealing the Regional Director's response to the Office of the General Counsel. Horning believes that he should not have to complete the process because he has earned sufficient time to be pre-released to home confinement as of June of 2023, but he has not shown that the BOP cannot address the substance of his disagreement in a reasonable period of time, that the BOP is biased against him, or that he has raised a substantial constitutional question. Instead, he simply disagrees with the BOP's calculations, which is not a basis to avoid exhaustion. Rather, Horning's disagreement confirms that the BOP, rather than this court, should have the opportunity to address the substance of Horning's concerns about his FTC calculations. Therefore, the court will not excuse his failure to exhaust his administrative remedies.

*Second*, respondent maintains that Horning is not entitled to prerelease custody or supervised release because he has not earned sufficient FTCs to merit his release. Because Horning has not shown that the FTCs that he has earned equal the remainder of his term of incarceration, or, more importantly, that the BOP's calculations have been incorrect, the court agrees with respondent.

Respondent explains that beginning August 16, 2022, the BOP awarded Horning 10 days of FTCs for each 30-day period he participated in approved programming. Then,

4

*after* Horning received a second consecutive minimum risk assessment in February 2023, he began earning five additional FTC days for each subsequent 30-day period. Therefore, the BOP has calculated Horning's total number of FTCs to be 105 days, meaning his release date is October 1, 2023. The BOP has approved Horning's placement directly to home confinement on or about August 17, 2023.

Horning disagrees, arguing that he is entitled to have 165 days of credit applied now, but his calculation is improper. In reaching 165 days, Horning applied the 15-day earning rate for *all* of his FTCs, which would place his release date at August 12, 2023. (*See* dkt. #1, at 4; Ex. 3-5 (dkt. ##1-3, 1-4, 1-5).) Thus, Horning has not shown that he has actually earned FTCs for the June and July 30-day periods of time. Indeed, the most recent calculation he provided was from May of 2023. (*See* dkt. #14-7.) More importantly, Horning is not entitled to have the extra 5 days of FTCs apply to periods of time *before* he had two risk assessments at low or minimum. Respondent explains that applying Horning's suggested approach – retroactively awarding the higher earning rate -- would not make sense and would be too unpredictable for the BOP to manage, requiring a recalculation of past FTCs in circumstances in which there is a change in inmate risk assessments. Respondent is correct: if every inmate must receive multiple, PATTERN scores of a low or minimum to have FTCs applied to their sentence, then *every* inmate would receive 15 days of FTCs for all 30-day periods, and the 10-day earning period would not make sense.

5

Because Horning has not shown that the BOP's calculation is incorrect or improper, he does not appear entitled to the relief sought. Regardless, as the time for release has now past, the court must deny his petition as MOOT.

ORDER

IT IS ORDERED that:

1) Douglas Horning's petition under 28 U.S.C. § 2241 is DENIED AS MOOT; and

2) The clerk of court is directed to close this case.

Entered this 3rd day of November, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge